# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                          Respondent,<br><br>     v.<br><br>JOHN MICHAEL BALE,<br><br>                          Appellant.<br>In The Matter of the Personal Restraint Petition of<br><br>JOHN MICHAEL BALE,<br><br>                         Petitioner. | No.  48042-5-II<br><br><br><br><br><br>Consolidated With<br><br>No.  47569-3-II<br><br><br><br>UNPUBLISHED OPINION |

WORSWICK, P.J. — In this consolidated case comprising John M. Bale's direct appeal and personal restraint petition (PRP), Bale appeals his sentence following a remand for resentencing and collaterally attacks his convictions for first degree assault.  In his direct appeal, we hold that (1) the sentencing court did not err in imposing a standard range sentence and (2) Bale cannot show that defense counsel was ineffective.  Additionally, none of the issues Bale raises in his statement of additional grounds (SAG) are meritorious.

Regarding Bale's PRP, we decline to review his arguments that his due process rights were violated when he could not use the Kitsap County Jail's law library, that there was insufficient evidence to support his convictions for first degree assault, and that the trial court erred in denying his motion for substitute counsel because these issues were resolved in his prior

No. 48042-5-II
Cons. with No. 47569-3-II

appeal. We decline to consider Bale's argument that we erred in failing to conduct a harmless error analysis in reversing his conviction for possession of a stolen firearm because Bale did not file a motion for reconsideration of that issue. We hold that (1) Bale's due process rights were not violated when the State filed an amended information, (2) Bale fails to show the prosecutor committed misconduct or fails to show that he was prejudiced by the prosecutor's conduct, (3) Bale fails to show that he received ineffective assistance of counsel, (4) Bale fails to show that witnesses committed perjury, (5) Bale fails to show that witnesses offered impermissible opinion testimony, (6) Bale's right to speedy arraignment was not violated, and (7) Bale's right to a fair appeal was not violated. Consequently, we affirm Bale's sentence, deny his PRP, and waive appellate costs.[1]

FACTS

A jury found Bale guilty of two counts of first degree assault, each with a firearm sentencing enhancement, and one count of possession of a stolen firearm arising from Bale's altercation with two police officers. The trial court imposed a standard range sentence of 531 months of imprisonment. Bale appealed, and we reversed his possession of a stolen firearm conviction for insufficient evidence and remanded for resentencing. *State v. Bale*, No. 44172-1 (Wash. Ct. App. Oct. 14, 2014) (unpublished), http://www.courts.was.gov/opinions, at 15. After remand, but before the resentencing hearing, Bale filed his PRP.

---

[1] Bale also argues that it is unconstitutional to require an indigent defendant to pay appellate costs. We do not reach this constitutional question because the State has represented to us that it will not seek such costs.

2

At resentencing, the State told the sentencing court that "[b]ecause these are serious violent offenses under 9.94A, I believe it's 589(1)(b), they run consecutive." Verbatim Report of Proceedings (VRP) (Aug. 21, 2015) at 4. Bale objected on his own behalf, arguing that the sentencing court had the discretion to impose concurrent sentences. Alternatively, Bale's counsel argued for a low-end standard sentence. Bale's counsel agreed that Bale's first degree assault convictions were convictions for serious violent offenses and that his sentences should run consecutively as provided in RCW 9.94A.589.

Bale spoke on his own behalf and requested that he receive an exceptional sentence downward because he "was not guilty of this . . . . [M]ere possession of a firearm doesn't show intent" and because "nothing happened nor was [his] intent to even hurt [the officers]." VRP (Aug. 21, 2015) at 26, 28. The sentencing court denied his request, stating:

> There aren't any statutory mitigating factors, and for me to do an exceptional [sentence] down would require me to make certain findings that statutory mitigating factors exist. It's not simply within the Court's discretion. There has to be reasons that are set out in the statute, and this isn't one of them.

VRP (Aug. 21, 2015) at 28-29. The court ordered that Bale's sentences for the two serious violent offenses run consecutively for a total of 490 months of imprisonment.[2] Bale appealed, and we consolidated his direct appeal with his PRP.

---

[2] The sentencing court ordered Bale to 227 months in confinement, the high end of the standard range, on count I and 93 months in confinement, the low end of the standard range, on count II. Both convictions included an additional 60-month firearm enhancement.

ANALYSIS

I.  SENTENCING

Bale argues that the sentencing court erred in concluding that it did not have the authority

to impose an exceptional sentence downward on his convictions for two serious violent offenses.

We disagree.

We review a sentencing court's decision to deny an exceptional sentence for abuse of

discretion.  *State v. McGill*, 112 Wn. App. 95, 100, 47 P.3d 173 (2002).  A court abuses its

discretion when it denies an exceptional sentence based on an incorrect belief that it is not

authorized to grant the sentence.  *State v. O'Dell*, 183 Wn.2d 680, 696-97, 358 P.3d 359 (2015).

Generally, a sentencing court must impose a sentence within the standard range set by the

Sentencing Reform Act of 1981 (SRA).  *State v. Graham*, 181 Wn.2d 878, 882, 337 P.3d 319

(2014).  The SRA sets standard-range sentences for multiple serious violent offenses in RCW

9.94A.589(1)(b).  Under the SRA's multiple offense policy, the standard range for two or more

serious violent offenses is consecutive sentences.  RCW 9.94A.589(1)(b).  However, RCW

9.94A.535(1) provides that a sentencing court may depart from the standard sentence range for

substantial and compelling reasons, and it may "impose an exceptional sentence below the

standard range if it finds that mitigating circumstances are established by a preponderance of the

evidence."  The court may order that multiple serious violent offenses run concurrently as an

exceptional sentence downward only if it finds mitigating circumstances that justify its departure

from the standard range.  RCW 9.94A.535(1); *In re Pers. Restraint of Mulholland*, 161 Wn.2d

322, 329-31, 166 P.3d 677 (2007).

At resentencing, the State told the sentencing court that Bale's sentences would run consecutively under RCW 9.94A.589(1)(b). Bale argued that the sentencing court had discretion to impose an exceptional sentence downward and order that his sentences run concurrently. Bale also requested that he receive an exceptional sentence downward because he "was not guilty of this . . . . [M]ere possession of a firearm doesn't show intent" and because "nothing happened nor was [his] intent to even hurt [the officers]." VRP (Aug. 21, 2015) at 26, 28.

The sentencing court denied Bale's request, stating: "There aren't any statutory mitigating factors, and for me to do an exceptional down would require me to make certain findings that statutory mitigating factors exist. It's not simply within the Court's discretion." VRP (Aug. 21, 2015) at 28. The court then ordered that Bale's sentences for the two serious violent offenses run consecutively for a total of 490 months in confinement.

Bale contends the sentencing court denied his request for an exceptional sentence downward because of its mistaken belief that it did not have the statutory authority to grant his request. However, the record does not support Bale's contention. Here, the sentencing court correctly stated that it did not have discretion to sentence Bale to an exceptional sentence *without mitigating factors* and that no such factors supported departure from the standard sentence range. Because the court determined that an exceptional sentence was not justified by any mitigating circumstances, it was not authorized by the SRA to impose an exceptional sentence downward and sentence Bale to concurrent sentences. Accordingly, the sentencing court's denial of Bale's request for an exceptional sentence downward was not based on a mistaken belief that it lacked

5

statutory authority to grant his request. Therefore, the court did not abuse its discretion in imposing a standard range sentence.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Bale next argues that his counsel was ineffective by failing to cite applicable case law regarding the sentencing court's authority to consider and impose an exceptional sentence downward. We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee a criminal defendant the right to effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). We review ineffective assistance of counsel claims de novo. *State v. Binh Thach*, 126 Wn. App. 297, 319, 106 P.3d 782 (2005).

To prevail on an ineffective assistance of counsel claim, the defendant must show that defense counsel's representation was deficient and that the deficient representation prejudiced him. *Grier*, 171 Wn.2d at 32-33. Failure to establish either prong is fatal to an ineffective assistance of counsel claim. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

Counsel's performance is deficient if it falls below an objective standard of reasonableness, and there is "'a strong presumption that counsel's performance was reasonable.'" *Grier*, 171 Wn.2d at 33 (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). Failure to cite controlling case law can constitute deficient performance. *State v. Hernandez-Hernandez*, 104 Wn. App. 263, 266, 15 P.3d 719 (2001). To establish prejudice, a

defendant must show a reasonable probability that but for the deficient performance, the result of the proceeding would have been different. *Grier*, 171 Wn.2d at 34.

At resentencing, Bale's counsel agreed that Bale's sentences for two serious violent offenses should run consecutively under RCW 9.94A.589. Defense counsel argued that Bale should receive the low end of the statutory range for his offenses because "[o]bviously, this is a lot of time for his conduct." VRP (Aug. 21, 2015) at 15.

Bale later spoke on his own behalf and requested that the sentencing court impose an exceptional sentence downward because he did not intend to hurt the officers involved. The sentencing court denied Bale's request and imposed a sentence at the high end of the standard range for one first degree assault conviction and a sentence at the low end of the standard range for the other first degree assault conviction. The sentences were ordered to run consecutively.

To show prejudice here, Bale must show there is a reasonable probability that had defense counsel cited controlling case law, the sentencing court would have imposed an exceptional sentence downward. *See Grier*, 171 Wn.2d at 33. Bale's argument fails for two reasons. First, while Bale's counsel did not direct the sentencing court's attention to case law regarding its authority to impose an exceptional sentence downward, the record shows the court was aware of its authority to do so. The sentencing court did not impose an exceptional sentence downward because it did not find mitigating factors, not because Bale's counsel failed to cite controlling law. Second, defense counsel asked that the sentencing court impose a low-end sentence; it did not. Because the sentencing court rejected a low-end standard range sentence, Bale cannot show that the court would not have imposed an exceptional sentence downward.

7

Bale fails to show that had his counsel cited to controlling case law and requested an exceptional sentence downward, the sentencing court would have imposed the sentence. Therefore, Bale cannot show that his counsel's representation prejudiced him, and his claim fails.

### III. APPELLATE COSTS

Bale also argues that it is unconstitutional to require an indigent defendant to pay appellate costs and that we should decline to follow the procedure for obtaining and opposing appellate costs as proscribed by Division One of this court in *State v. Sinclair*, 192 Wn. App. 380, 367 P.3d 612 (2016). The State has represented to us that it will not seek appellate costs. Because the State will not be seeking costs, it is unnecessary for us to reach Bale's constitutional question. *City of Seattle v. Williams*, 128 Wn.2d 341, 347, 908 P.2d 359 (1995). Nonetheless, we exercise our discretion and expressly waive appellate costs.

Under RCW 10.73.160(1), we may order adult offenders to pay appellate costs. However, we have the discretion to waive appellate costs. RAP 14.2; *Sinclair*, 192 Wn. App. at 389-90.

The trial court found that Bale was indigent. We presume under RAP 15.2(f) that he remains indigent "throughout the review" unless the trial court finds that his financial condition has improved. Therefore, we waive appellate costs.

### STATEMENT OF ADDITIONAL GROUNDS

In his SAG, Bale raises several additional grounds for review. Bale claims (1) prejudicial evidence was introduced at trial that poisoned the jury, (2) there was insufficient evidence to support his convictions for first degree assault, (3) the State violated his right to a speedy trial,

8

(4) the county violated his due process rights by denying him access to the law library, (5) the

court violated his right to testify, (6) malicious prosecution, (7) ineffective assistance of counsel

at trial, (8) the State committed a *Brady*[3] violation by failing to disclose witnesses' statements,

and (9) his constitutional rights were violated because no minorities served on the jury.

Bale's allegations that (1) there was insufficient evidence to support his convictions for

first degree assault, (2) the State violated his right to a speedy trial, and (3) the county violated

his due process rights by denying him access to the law library improperly attempt to relitigate

issues affirmed in his first direct appeal. "Once an issue is decided on appeal, it cannot be

reargued unless the decision in the prior appeal is clearly erroneous." *State v. Calhoun*, 163 Wn.

App. 153, 168, 257 P.3d 693 (2011). Bale offers no argument that our prior decisions were

clearly erroneous, and we do not consider his claims.

Further, Bale's additional allegations rely entirely on matters outside the record on

appeal,[4] regardless of his attachment of such materials to his SAG. *State v. Hecht*, 179 Wn. App.

497, 511, 319 P.3d 836 (2014). Accordingly, Bale's additional allegations cannot be considered

on direct appeal. *State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008).

PERSONAL RESTRAINT PETITION

Bale makes numerous arguments in his PRP claiming that his first degree assault

convictions and sentence must be reversed. He claims that (1) the State violated his due process

---

[3] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

[4] Bale's direct appeal involves only his resentencing and not his prior trial.

rights when he could not use the Kitsap County Jail's law library, insufficient evidence supported his convictions, and the trial court erred in denying his motion to substitute counsel; (2) we erred in failing to conduct a harmless error analysis in reversing his conviction for possession of a stolen firearm; (3) the State violated his due process rights when it filed an amended information; (4) the prosecutor committed misconduct; (5) he received ineffective assistance of counsel; (6) witnesses committed perjury while testifying at trial; (7) witnesses offered impermissible opinion testimony; (8) his right to speedy arraignment was violated; and (9) his right to a fair appeal was violated.[5] We disagree with these arguments and deny Bale's petition.

The petitioner in a PRP must first prove error by a preponderance of the evidence. *In re Pers. Restraint of Crow*, 187 Wn. App. 414, 420-21, 349 P.3d 902 (2015). Then, if the petitioner is able to show error, he must also prove prejudice, the degree of which depends on the type of error shown. 187 Wn. App. at 421.

To obtain relief, the petitioner must show either constitutional or nonconstitutional error. *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 810-11, 792 P.2d 506 (1990). If the error is constitutional, the petitioner must demonstrate that it resulted in actual and substantial prejudice. *In re Pers. Restraint of Woods*, 154 Wn.2d 400, 409, 114 P.3d 607 (2005). "Actual and substantial prejudice, which 'must be determined in light of the totality of circumstances,' exists if the error 'so infected petitioner's entire trial that the resulting conviction violates due

---

[5] Bale also argues the sentencing court erred in imposing a standard range sentence. We addressed this issue in Bale's direct appeal above and, accordingly, do not address it further.

process.'" *Crow*, 187 Wn. App. at 421 (quoting *In re Pers. Restraint of Music*, 104 Wn.2d 189, 191, 704 P.2d 144 (1985)). If the error is nonconstitutional, the petitioner must meet a stricter standard and demonstrate that the error resulted in a fundamental defect which inherently resulted in a complete miscarriage of justice. *In re Pers. Restraint of Schreiber*, 189 Wn. App. 110, 113, 357 P.3d 668 (2015).

The petitioner must support his claims of error with a statement of facts on which his claim of unlawful restraint is based and the evidence available to support his factual allegations. RAP 16.7(a)(2); *In re Pers. Restraint of Williams*, 111 Wn.2d 353, 365, 759 P.2d 436 (1988). In addition, the petitioner must state with particularity facts that, if proven, would entitle him to relief, and he must present evidence showing his factual allegations are based on more than speculation and conjecture. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086, *cert. denied*, 506 U.S. 958 (1992). A petitioner cannot rely on conclusory allegations. *Cook*, 114 Wn.2d at 813-14.

A personal restraint petitioner may not renew an issue that he raised and an appellate court rejected on the merits in a direct appeal unless the interests of justice require relitigation of that issue. *Schreiber*, 189 Wn. App. at 113. The interests of justice require relitigation where the law has changed after the direct appeal or where some other justification exists for the petitioner's failure to have raised a critical argument in the prior appeal. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013).

If the petitioner fails to make a prima facie showing of either actual or substantial prejudice or a fundamental defect, we deny the PRP. 177 Wn.2d at 17. If the petitioner makes

11

such a showing, but the record is not sufficient to determine the merits, we remand for a reference hearing. 177 Wn.2d at 18. But if we are convinced that the petitioner has proven actual and substantial prejudice or a fundamental defect, we grant the petition. 177 Wn.2d at 18.

### I. MATTERS CONSIDERED IN BALE'S PRIOR APPEAL

Bale raises three issues we considered in his first direct appeal. He argues that his due process rights were violated when he could not use the Kitsap County Jail's law library after obtaining a court order permitting him access, there was insufficient evidence to support his first degree assault convictions, and the trial court erred in denying his motion for substitute counsel. We considered these arguments on their merits and rejected them in Bale's previous appeal. *Bale*, No. 47172-1, slip op. at 6-7, 13. Bale does not argue or show that the interests of justice require these issues' relitigation. We decline to review these arguments.

### II. APPELLATE ERROR

Bale also argues that we erred in failing to conduct a harmless error analysis in reversing his conviction for possession of a stolen firearm. This argument fails.

By challenging our analysis in his first direct appeal, Bale's argument here is essentially a motion for reconsideration. RAP 12.4(b) provides that a party must file a motion for reconsideration of a court of appeals' decision no later than 20 days after the decision was made. Accordingly, Bale's argument is untimely, and his claim fails.

III. AMENDED INFORMATION

Bale also argues that his due process rights were violated when the State delayed filing an amended information and suggests that the State's delay amounts to prosecutorial misconduct. This argument fails.

The State has discretion to decide whether to prosecute cases, but this discretion is not unfettered. *State v. Kenyon*, 150 Wn. App. 826, 830, 208 P.3d 1291 (2009). A charge cannot be filed unless it is supported by probable cause. *State v. Korum*, 157 Wn.2d 614, 664, 141 P.3d 13 (2006) (Madsen, J., dissenting).

A criminal proceeding is commenced when the State files an initial information. CrR 2.1(a). CrR 2.1(d) provides that a trial court may permit "any information . . . to be amended at any time before verdict or finding if substantial rights of the defendant are not prejudiced." The primary purpose of this rule is "to give notice to an accused of the nature of the crime that he or she must be prepared to defend against." *State v. Kjorsvik*, 117 Wn.2d 93, 101, 812 P.2d 86 (1991).

Criminal proceedings against Bale commenced on July 30, 2012, when the State filed its initial information charging first degree assault and felony possession of a firearm. On October 30, 2012, the State filed an amended information charging two counts of first degree assault with special allegations and one count of felony possession of a firearm. The trial court arraigned Bale on the amended information the same day, and trial began the next day.

Bale did not object to the filing of the amended information. Now, Bale's only argument regarding this issue is that he was prejudiced by the State's filing of the amended information

13

because "his conduct clearly never [met] the requirements of another charge that was added."

PRP at 6.  However, Bale is incorrect.  For a prosecutor to file a charge, the charged offense

must be supported by probable cause.  *Korum*, 157 Wn.2d at 664.  The jury returned a guilty

verdict on the additional first degree assault charge and returned special verdicts finding that

Bale was armed with a firearm during the commission of the first degree assaults.  Because the

jury found Bale guilty, he is unable to show that the charges were not supported by probable

cause or that "his conduct clearly never [met] the requirements" of the new charges.  PRP at 6.

Further, Bale baldly asserts without argument or authority that the State's conduct in filing the

amended information amounts to prosecutorial misconduct.  This claim fails.

## IV.  PROSECUTORIAL MISCONDUCT

Bale also argues the prosecutor committed misconduct by (a) making a motion for no

speaking objections, (b) asking an officer during direct examination about the protocols for use

of deadly force, (c) asking a testifying officer leading questions, (d) misstating the definition of

"intent," and (e) stating in closing argument that Bale was guilty of first degree assault because

he intended to kill the officers.[6]  Bale's arguments fail.

To prevail on a claim of prosecutorial misconduct, a petitioner must show that in the

context of the record and all the trial circumstances, the prosecutor's conduct was improper and

prejudicial.  *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011).  To show prejudice, a

---

[6] Bale also argues the prosecutor committed misconduct by recommending that Bale's sentences run consecutively.  As discussed in his direct appeal, sentences for multiple serious violent offenses must run consecutively unless mitigating circumstances support an exceptional sentence downward.  Thus, the State's recommendation was not improper.

petitioner must show a substantial likelihood that the misconduct affected the verdict. 172 Wn.2d at 442-43. If a petitioner fails to object to misconduct at trial, he waives the issue unless he establishes the misconduct was so flagrant and ill-intentioned that it caused an enduring prejudice that could not have been cured with an instruction to the jury. 172 Wn.2d at 443.

As an initial matter, Bale failed to object to the prosecutor's purportedly improper actions and statements. As a result, he must show that if the prosecutor committed misconduct, the misconduct was so flagrant and ill-intentioned that its prejudicial effect could not be cured by an instruction. 172 Wn.2d at 443.

A.      *Moving for No Speaking Objections*

Bale argues it was improper for the prosecutor to move to prohibit speaking objections at trial and that the prosecutor's motion prejudiced him because of the complexity of his case. Bale's argument fails.

Speaking objections are neither prohibited nor authorized by Washington's Rules of Evidence. 5 WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 103.8, at 52 (6th ed. 2016). Instead, the rules allow the trial court judge to determine the propriety of speaking objections. 5 WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 103.8, at 52 (6th ed. 2016). Accordingly, it was not improper for the prosecutor to file a motion requesting that no speaking objections be made at trial. Therefore, the prosecutor did not commit misconduct, and Bale's claim fails.

B.      *Questioning Regarding Deadly Force*

Bale argues the following exchange on direct examination was misconduct:

[PROSECUTOR]: Okay. Now, you've got him at gunpoint. He's pulled a gun on you. Why not just shoot him dead?
[OFFICER]: Because . . . [it] doesn't meet the requirements for the use of deadly force, at that point, because I have his weapon. . . .
[PROSECUTOR]: You talked about the protocol for using deadly force with somebody.
　　　Would there have been a different protocol in place at the initial point where you took him to the ground, if you had your service revolver out?
[OFFICER]: Yes.
[PROSECUTOR]: And what would that have been?
[OFFICER]: That would have met the requirements for the use of deadly force.

PRP at Ex. R.

Bale fails to cite any authority that supports his contention that the prosecutor's questions were improper. Additionally, Bale does not argue or provide evidence showing why the prosecutor's questions were so flagrant and ill-intentioned as to warrant reversal. Because Bale does not show how the prosecutor's questions prejudiced him, and does not allege that any potential prejudice could not be cured by an instruction, his claim fails.

C.　*Leading Questions*

Bale argues the "[p]rosecutor had questioned the witness by leading the witness into stating an answer of what was recovered." PRP at 14. Bale contends the following exchange is improper:

[PROSECUTOR]: Okay. Now, you testified earlier that some people who were sort of just witnesses saw the other two males associated throw some stuff.
[OFFICER]: Yes.
[PROSECUTOR]: Did you recover or was a BB gun recovered?
[OFFICER]: Yes.
[PROSECUTOR]: Did you get a look at the BB gun?
[OFFICER]: Yes.
[PROSECUTOR]: And did it look different than the weapon that Mr. Bale had?
[OFFICER]: Yes.

16

[PROSECUTOR]: Okay. Is there any doubt in your mind that the weapon that Mr. Bale had was a semi-automatic gun, 9mm, as opposed to a BB gun?
[OFFICER]: No doubt in my mind whatsoever.

PRP at Ex. GG.

Bale does not argue that the prosecutor's conduct was flagrant and ill-intentioned. Further, Bale does not argue how the above exchange prejudiced him at trial and does not show that any resulting prejudice was incurable. Accordingly, Bale's claim fails.

D. *Misstating the Law*

Bale argues the prosecutor "in closing arguments, had again mis-stated [sic] the element of 'intent' by stating 'all you have to do is scare them.'" PRP at 14 (citing PRP at Ex. MM). Although Bale cites to the record, the statement he quotes above is not located in the record as cited. As a result, Bale does not specify which statements we are to review. Because Bale fails to state with particularity facts that would entitle him to relief, his claim fails.

E. *Closing Argument*

Bale also argues the prosecutor committed misconduct during closing argument by stating Bale intended to shoot and kill the officers, the evidence proved Bale was guilty of two counts of first degree assault, and the prosecutor only needed to prove the officers were afraid to prove intent. This argument fails.

We review a prosecutor's purportedly improper remarks in the context of the entire argument, the issues in the case, the evidence addressed in the argument, and the instructions to the jury. *State v. Gregory*, 158 Wn.2d 759, 810, 147 P.3d 1201 (2006). A prosecutor has wide

17

latitude to comment on evidence introduced at trial and to draw reasonable inferences from that evidence. *Thorgerson*, 172 Wn.2d at 448.

During closing argument, the prosecutor stated: "That shows you intent right there. Because it's a volitional act that he did with a purpose. . . . What's that purpose? To kill this officer, to hurt this officer, to get away from this officer." PRP at Ex. OO. The prosecutor continued, "Count 2 has to do with Officer Schandel. Now, you may say, well, the gun was never pointed at Officer Schandel. Well, ladies and gentlemen of the jury, he was afraid, not only for his partner, the man he trained, but also for himself." PRP at Ex. QQ & RR.

Bale is unclear on how the above statements support his contentions that the prosecutor repeatedly committed misconduct during closing argument. The prosecutor commented on the evidence introduced at trial and inferred from that evidence that Officer Schandel feared for his life and that Bale's actions showed that he intended to inflict great bodily harm on the officers. Bale does not offer authority or analysis that specifies why the prosecutor's statements were improper and does not discuss how the prosecutor's statements prejudiced him. This claim fails.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Bale also argues he received ineffective assistance of counsel because (a) trial counsel failed to request a jury instruction on a lesser included offense, (b) trial counsel failed to object, (c) trial counsel failed to request a dismissal of his possession of a stolen firearm charge, and (d) appellate counsel failed to file a motion for reconsideration of his first direct appeal and did not notify him of the deadline to file the motion. Bale's arguments fail.

18

To establish ineffective assistance of counsel, Bale must show both deficient performance and resulting prejudice. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Counsel's performance is deficient when it falls below an objective standard of reasonableness. *Grier*, 171 Wn.2d at 33. To show prejudice, a petitioner must demonstrate that there is a probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *McFarland*, 127 Wn.2d at 335. Failure to establish either prong is fatal to an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 687. There is a strong presumption of effective assistance, and the petitioner bears the burden of demonstrating the absence of a strategic reason for the challenged conduct. *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002).

A.      *Failure To Submit a Lesser Included Instruction*

Bale argues that his counsel was ineffective by failing to request a jury instruction on a lesser included offense. This argument fails.

Counsel's decision to not request a jury instruction on a lesser included offense is not ineffective assistance of counsel if it can be characterized as part of a legitimate trial strategy to obtain an acquittal. *State v. Hassan*, 151 Wn. App. 209, 218, 211 P.3d 441 (2009). "'When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient.'" *Grier*, 171 Wn.2d at 33 (quoting *Kyllo*, 166 Wn.2d at 863. Accordingly, we must determine if counsel's decision not to request a lesser included instruction was reasonable. 171 Wn.2d at 34.

The ineffective assistance of counsel standard is highly deferential, and it requires that we presume counsel's performance was reasonable. Bale fails to state with particularity any facts that would entitle him to a lesser included instruction and does not provide any analysis to explain how counsel's failure to request the instruction was unreasonable. Accordingly, Bale cannot demonstrate that his counsel's performance was deficient for not proposing a lesser included instruction because tactical choices cannot demonstrate ineffective assistance of counsel. Because Bale did not show that his counsel's performance in failing to request a lesser included offense instruction was deficient, his claim fails.

B.      *Failure To Object*

Bale also argues that he was prejudiced by ineffective assistance of counsel when trial counsel failed to object to the prosecutor's purported misconduct and to the officers' testimony regarding the firearm and altercation. This argument fails.

We view the decisions of whether and when to object as "classic example[s] of trial tactics." *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662, *review denied*, 113 Wn.2d 1002 (1989). "Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal." 53 Wn. App. at 763. Where a petitioner bases his ineffective assistance of counsel claim on trial counsel's failure to object, the petitioner must show that the objection would likely have succeeded. *State v. Gerdts*, 136 Wn. App. 720, 727, 150 P.3d 627 (2007).

Bale fails to provide facts showing that the complained-of statements and questions were so egregious as to warrant reversal or that an objection by counsel would likely have succeeded.

20

Further, Bale does not offer facts or analysis explaining how the result of his trial would have been different had counsel objected. As a result, Bale fails to demonstrate that his counsel's performance prejudiced him at trial. Accordingly, Bale cannot demonstrate ineffective assistance of counsel, and his claim fails.

C.      *Failure To Request Dismissal of Bale's Possession of a Stolen Firearm Charge*

Bale also argues that his trial counsel was ineffective for failing to request a dismissal of his unlawful possession of a firearm charge. This claim is moot.

Generally, we do not review a question that is moot. *Citizens for Financially Responsible Gov't v. City of Spokane*, 99 Wn.2d 339, 350, 662 P.2d 845 (1983). A case is moot "when it involves only abstract propositions or questions, the substantial questions in the trial court no longer exist, or a court can no longer provide effective relief." *Spokane Research & Def. Fund v. City of Spokane*, 155 Wn.2d 89, 99, 117 P.3d 1117 (2005).

On Bale's first direct appeal, we reversed Bale's conviction for possession of a stolen firearm for insufficient evidence. *Bale*, No. 47172-1, at 15. Accordingly, we cannot provide Bale effective relief. Further, Bale fails to show how counsel's failure to request dismissal resulted in actual and substantial prejudice as he does not argue that the charge affected his first degree assault convictions. Therefore, we do not address this claim because it is moot.

D.      *Appellate Counsel's Failure To File Motion for Reconsideration*

Bale also argues that appellate counsel was ineffective by failing to file a motion for reconsideration of his first direct appeal and by failing to notify him of the deadline to file the motion. This argument fails.

21

Bale fails to state any facts showing that we would have granted a motion to reconsider his first direct appeal had either he or appellate counsel timely filed a motion for reconsideration. Further, Bale offers no analysis of how appellate counsel's failure prejudiced him. Because Bale cannot show that counsel's failures resulted in actual and substantial prejudice, his claim fails.

## VI.  WITNESSES' ALLEGED PERJURY

Bale also argues that the officers committed perjury while testifying at trial. However, Bale does not present evidence showing that the officers' testimony was knowingly false. Further, Bale is unable to present facts showing that his bald assertions are more than speculation and conjecture. Accordingly, without additional information, Bale fails to show that the officers' testimony was perjured and resulted in a complete miscarriage of justice. His claim fails.

## VII.  INADMISSIBLE OPINION EVIDENCE

Bale also argues that the officers' opinion testimony as to his guilt improperly invaded the province of the jury. Despite this, Bale does not provide evidence showing that the officers testified about his guilt and does not specify the statements he considers improper. Further, Bale does not offer an analysis of how the officers' alleged testimony invaded the province of the jury. As a result, Bale does not state any facts which, if proven, would entitle him to relief and fails to present evidence showing that his allegations are more than mere conjecture. Thus, his claim fails.

## VIII.  RIGHT TO SPEEDY ARRAIGNMENT

Bale also argues that his right to speedy arraignment was violated because the district court lacked subject matter jurisdiction to arraign him. This argument fails.

RCW 3.66.060 governs the district court's criminal jurisdiction and grants district and superior courts concurrent jurisdiction. *State v. Stock*, 44 Wn. App. 467, 474, 722 P.2d 1330 (1986). RCW 3.66.060 provides that the district court "shall have jurisdiction . . . to sit as a committing magistrate and conduct preliminary hearings in cases provided by law." Accordingly, district courts have jurisdiction to arraign defendants for felony charges. *See State v. Bliss*, 191 Wn. App. 903, 913, 365 P.3d 764 (2015). The district court's exercise of its concurrent jurisdiction "does not deprive the superior courts of any power." *Stock*, 44 Wn. App. at 474. Therefore, the district court had concurrent jurisdiction with the trial court when it arraigned Bale. His claim fails.

## IX. MISSING TRANSCRIPTS

Bale also argues that his right to a fair appeal was violated because the court refused to provide him with requested copies of the transcript showing that the prosecutor was removed from the case. This argument fails.

A petitioner is entitled to a record of sufficient completeness to permit meaningful appellate review of his claims. *State v. Tilton*, 149 Wn.2d 775, 781, 72 P.3d 735 (2003). "'A record of sufficient completeness does not translate automatically into a complete verbatim transcript.'" 149 Wn.2d at 781(internal quotations omitted) (quoting *Mayer v. City of Chicago*, 404 U.S. 189, 194, 92 S. Ct. 410, 414, 30 L. Ed. 2d 372 (1971)). A party seeking review arranges for the transcription of all portions of the record necessary to present the issues raised on appeal. RAP 9.2(a), (b).

No. 48042-5-II
Cons. with No. 47569-3-II

Bale filed a motion for the verbatim report of proceedings from August 2, 2012, on January 2, 2015. The court denied Bale's motion, finding that because Bale was represented by counsel and his direct appeal had been decided, "if the attorney who wishes to petition for review from the state Supreme Court needs a record, they will order it, no doubt." VRP (Feb. 20, 2015) at 4-5.

While Bale is entitled to a record of sufficient completeness, he is not automatically entitled to a complete verbatim transcript. Bale does not allege facts showing that a proceeding on the record took place on August 2, 2012, and he does not corroborate his assertion that the trial prosecutor was removed in that proceeding. Further, Bale fails to show that the court's denial of his motion for the verbatim report of proceedings resulted in actual and substantive prejudice. Therefore, Bale's claim fails.

We affirm Bale's sentence, deny his personal restraint petition, and waive appellate costs.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, P.J.

We concur:

_____
Johanson, J.

_____
Sutton, J.

24